IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRITTNEY G.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 23 C 15529 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381a, 1382c, over two and a half years ago in September of 2021. (Administrative Record (R.) 178-83). He[2] claimed that he had been disabled since September 10, 2020 (R. 178, 196) due to "Epilepsy, Tumor removed from Right Ear." (R. 200). Over the next two years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the most recent ALJ's decision that is before the court for review. *See* 20 C.F.R. §§ 404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on November 1, 2023, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) on November 7, 2023. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

[2] Plaintiff's counsel informs the court that the plaintiff's preferred pronouns are "he" and "him." [Dkt. #12, at 1 n.2].

the decision.

I.

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following medically determinable impairments: "History of right parotid tumor surgically removed; epilepsy." (R. 19). The ALJ further found that the plaintiff did not have a severe impairment because these impairments, singly or in combination, did not significantly limit the ability to perform basic work-related activities for twelve consecutive months. (R. 19-20).

The ALJ then summarized the plaintiff's allegations. He noted that the plaintiff claimed to have 15 seizures per month, a history of missing school and work due to seizures, and recently had his medication dose increased. Additionally, the plaintiff testified that he had a torn ligament in his right shoulder, uses a cane to walk due to right hip issues, and had a history of tumor removal from behind his right ear. (R. 20). The ALJ then found that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence of record, including the [plaintiff's] work history." (R. 20). The ALJ explained that the plaintiff's sporadic work activity in the years leading up to the application date do not support the plaintiff's allegation that his impairments have prevented work activity since his application date. (R. 20-21). The ALJ also noted that the plaintiff had a driver's license, worked as an Amazon delivery truck driver, and despite the alleged seizure activity, drove a car and took his child to and from school, all of which called into question the plaintiff's allegations regarding the frequency and severity of seizure activity. (R. 21). The ALJ also considered testimony from the plaintiff's mother that the plaintiff had fifteen seizures a month and went to emergency rooms all

2

over Chicago following seizures, but noted that the medical record did not support this. (R. 21).

As for the medical record, the ALJ noted that the plaintiff had a right parotid tumor surgically removed on November 9, 2020, had a good recovery, and that post-operative record notes showed that the plaintiff's facial nerve was fully intact and the initial pathology was benign. According to a November 20, 2020 record, the plaintiff had had no seizures for a few years despite not taking medication. As of April 12, 2021, plaintiff had complaints of lack of bladder control and urinary frequency, and said he had not had a seizure for a year. An April 21, 2021 audiogram revealed normal hearing in the left ear and only mild sensorineural hearing loss in the right ear. (R. 21). On November 5, 2021, the plaintiff complained of abdominal pain, Examination findings were largely unremarkable findings and plaintiff did not mention seizures. On December 20, 2021, the plaintiff sought treatment for bilateral hip pain, but imaging was unremarkable. The plaintiff said he had had a seizure the night before, but the examination was unremarkable, including 5/5 motor strength, equal and intact sensation in the bilateral lower extremities, and no tenderness to palpation in the back or hips. The plaintiff again reported he had not taken his seizure medication for the prior two years. On February 9, 2022, plaintiff established treatment with a new physician. Examination was normal, the plaintiff did not mention seizures, and had no complaints. (R. 22).

The ALJ noted that on March 23, 2022, the plaintiff underwent a neurology consultation, and reported that his last seizure was on December 19, 2021. The plaintiff had not treated with neurology since 2016 and again reported he took no medication. Neurological examination was normal. Consistent with the normal March 23, 2022 neurological evaluation, later diagnostic testing was also normal. An April 2022 EEG showed normal activity and no focal slowing or epileptiform discharge. An April 2022 MRI also showed unremarkable findings. (R. 22).

3

The ALJ then considered the medical opinions. He noted that, on initial review, the state agency medical consultant opined that the plaintiff had no severe impairment, and that on reconsideration, the medical consultant opined that the plaintiff's epilepsy and hearing loss were severe, but resulted in no exertional limitations and only a limitation to avoiding concentrated exposure to hazards. The ALJ found the initial opinion persuasive, as it was supported by the limited treatment of record, including the plaintiff's lack of seizure medication since 2016 and the lack of diagnostic evidence supporting seizure episodes, including normal EEG and brain MRI findings. The ALJ found the reconsideration opinion that the plaintiff had a severe impairment not persuasive, as it was not supported by the lack of diagnostic evidence or the lack of seizure activity despite no medication. (R. 22). The ALJ added that the records also failed to support the finding that plaintiff's hearing loss was severe, as testing revealed no more than a mild loss. (R. 23).

Given that the plaintiff had no severe impairment, the ALJ concluded that he was not disabled and not entitled to benefits under the Act. (R. 23).

**II.**

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The substantial evidence standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023). Indeed, it may be less than a preponderance of the evidence, *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007), and is only that much "evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023); *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)(". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). While this requirement has been described as "lax," *Crowell*, 72 F.4th at 816; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008), the Seventh Circuit has also explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build

5

that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash. Indeed, the Seventh Circuit's opinion in *Jarnutowski*, 48 F.4th 769, exemplifies this subjectivity. Two judges on that panel felt the ALJ had not adequately explained aspects of her reasoning while a third judge, dissenting, thought she did, as did the Magistrate Judge who had reviewed the ALJ's decision (by consent) at the district court level. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1,

2021).

Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court explained that the ALJ had to:

> explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

766 F.2d at 287.

More recently, the Seventh Circuit has again emphasized that all ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). The court has explained "that social-security adjudicators are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024); *see also Morales v. O'Malley*, – F.4th –, –, 2024 WL 2794055, at *1 (7th Cir. May 31, 2024)(". . . ALJs are 'subject to only the most minimal of articulation requirements"—an obligation that extends no further than grounding a decision in substantial

evidence."). So, as ever, "[i]f a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985). The ALJ did enough here.

### III.

The plaintiff argues that the ALJ's step two determination that he had no severe impairments is not supported by substantial evidence.[3] At step two, an ALJ will find a plaintiff not disabled unless the plaintiff proves they have a "severe impairment," which is defined as "any impairment or combination of impairments which significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 CFR § 416.920(c); *Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020). While the Seventh Circuit regards the step two inquiry as "a de minimis screening for groundless claims," *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016); *O'Connor–Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. Aug. 9, 2016), to satisfy step two, a plaintiff still must demonstrate "abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 CFR. § 416.921. A plaintiff's "statement of symptoms" is not enough. *Atkins v. Saul*, 814 F. App'x 150, 155 (7th Cir. 2020); *see also Grotts*, 27 F.4th at 1278; *Zoch*, 981 F.3d at 601.

First, we have dueling opinions from the state agency reviewing physicians. But, in reality, it's not much of a duel. One – from Dr. Gotanco in January 2022– says the plaintiff has no severe impairment. (R. 59-61). The other – from Dr. Aquino in August of 2022 – says the plaintiff's seizure disorder and hearing loss are both severe (R. 65), but also that the plaintiff had no work

---

[3] Any other arguments the plaintiff might have raised are deemed waived. *Milhem v. Kijakazi*, 52 F.4th 688, 693 (7th Cir. 2022)("Arguments not raised in the district court are waived."); *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020)("... arguments omitted before the district court are [waived].").

limitations other than the need to avoid concentrated exposure to hazards. (R. 66). In the end, then, neither reviewing physician thought the plaintiff was disabled, and so, plaintiff's embrace of Dr. Aquino's opinion does him no good. Even if the plaintiff could somehow show that the ALJ ought to have accepted Dr. Aquino's opinion, he wouldn't qualify for benefits. A remand would be a waste of time. *See, e.g., Bakke*, 62 F.4th at 1068 n.3 ("Accordingly, any possible error is harmless and does not warrant remand."); *Karr*, 989 F.3d at 513 (". . . if the error leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required."); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.").

In any event, the ALJ found Dr. Gotanco closer to the mark than Dr. Aquino based on the medical record. As the ALJ explained, Dr. Gotanco's opinion was more in line with the medical record. The plaintiff sought limited treatment for seizures. He hadn't seen a neurologist since 2016 and had stopped taking medication about the same time. His EEG and MRI studies were both normal. And, the plaintiff's hearing test revealed no more than mild hearing loss. Overall, the medical record tends to depict non-severe impairments rather than impairments that significantly limits the plaintiff's physical or mental ability to do basic work activities. The ALJ's evaluation of the medical opinions was supported by substantial evidence. *See, e.g.,* 20 CFR § 416.1520c(b)(2)("The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be."); *Bakke*, 62 F.4th at 1068; *Albert v. Kijakazi*, 34 F.4th 611,

9

614 (7th Cir. 2022).

Then there is the March 2022 examination report from Dr. Orozco. The plaintiff contends that Dr. Aquino's opinion that the plaintiff had a severe impairment was supported by Dr. Orozco's neurological evaluation. Dr. Orozco noted that the plaintiff reported that he last experienced a seizure three months earlier, around December 2021. (R. 660). Plaintiff reported he had about 15-20 seizure events the previous year, and that they occurred both while he was awake and asleep. (R. 660). Plaintiff was not taking his seizure medication and had not seen a neurologist since 2016. (R. 660). Physical exam – including motor, sensory, coordination, and reflexes – was normal. (R. 661-62).

While Dr. Orozco diagnosed the Plaintiff with localization-related (focal) (partial) idiopathic epilepsy and epileptic syndromes with seizures of localized onset, intractable, with status epilepticus (R. 662), a diagnosis is not the same as a disability. *See, e.g., Fair v. Saul*, 853 F. App'x 17, 21 (7th Cir. 2021); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). What matters is the severity of the condition and how it limits plaintiff's capacity to work as based on clinical and/or laboratory findings. *See Elder*, 529 F.3d at 415 ("... it makes no difference if [plaintiff] saw [his doctor] "every two-and-a-half months" ... what does matter is that [his doctor] did not confirm the severity of [plaintiff's impairment] with medical examinations or tests."); *see also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004)("The issue in the case is not the existence of these various conditions of hers but their severity...."). Seizure disorders aren't necessarily severe impairments, *see, e.g., Krug v. Saul*, 846 F. App'x 403, 405–06 (7th Cir. 2021); *Egly v. Berryhill*, 746 F. App'x 550, 555 (7th Cir. 2018), and they aren't necessarily disabling. *See, e.g., Albert*, 34 F.4th at 616–17; *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021). Dr. Orozco

10

didn't suggest that the plaintiff had any significant work limitations in his March 2022 neurological evaluation. And, importantly, the studies he ordered – an MRI and an EEG – came back "unremarkable" and "normal." (R. 901, 906-07). Those studies, and Dr. Orozco's examination notes, do nothing to undermine the ALJ's opinion in this case.

That brings us to what is, perhaps, the elephant in the room: the plaintiff's allegations. The plaintiff argues they support his claim for disability; but, unfortunately, they are only allegations. As already noted, a plaintiff's allegations alone are not enough. *Atkins*, 814 F. App'x at 155; *Grotts*, 27 F.4th at 1278; *Zoch*, 981 F.3d at 601. As the ALJ noted, the plaintiff's allegations simply do not jibe with the rest of the evidence. At the hearing, on January 6, 2023, the plaintiff testified that as of August 2020, he began having at least five seizures a day. (R. 34). He testified that from September 2020 through January 2023, he had more than fifteen seizures a month and as many as five in one day. (R. 35-36). That number did not go down with medication. (R. 38). His mother testified that he went to the hospital each time he had a seizure (R. 47, 52). But in March 23, 2022, plaintiff told Dr. Orozco he had not had a seizure since December 2021, and had 15 to 20 in 2021. (R. 535, 660). That's a far cry from the five a day or even the fifteen a month he claimed to have when testifying at the hearing.

And there is no record of hospital treatment for multiple seizures each month – which is what plaintiff's mother claimed – or anything even approaching that. Indeed, the plaintiff adverts to *only two* instances of hospital treatment in his brief, once in August 2020 and once in December 2021. [Dkt. #12, at 2-3, citing R. 286, 288-290, 293, 9, 504-05]. The August 2020 hospital visit was prompted by smoke inhalation and possible carbon monoxide poisoning. (R. 285, 288-89). Plaintiff was treated with oxygen and doctors said the incident did not seem to be seizure-related. (R. 293).

11

When plaintiff sought treatment in December 2021, he said he had a seizure, fell out of bed, and hurt his hip. So, in reality, there is only one occasion in the entire record that the plaintiff can point to when he was treated for a seizure or, at least, a seizure-related injury. And, interestingly, during that December 2021 hospital visit, plaintiff told the doctors he had seizures once a month or so, which, again, completely contradicts the plaintiff's testimony. (R. 286). Overall, it's not surprising that the ALJ found that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical and other evidence of record,. . . ." (R. 20). *See, e.g., Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)(discrepancies between a plaintiff's allegations and the medical record may suggest exaggeration); *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) (same); *Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013)(same).

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #13] is granted, and the plaintiff's motion for judgment on the pleadings [Dkt. # 11] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 6/20/24

12